[No. 16476.   Department One.   March 15, 1922.]

OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY,
*Appellant,* v. McGOLDRICK LUMBER COMPANY,
*Respondent.*[1]

CARRIERS (5)—REGULATION AND CONTROL—DEMURRAGE CHARGES—
DELIVERY OF CARS. A railroad company did not make legal delivery
of cars, and could not recover demurrage charges where, owing to
unprecedented floods, cars of logs consigned to defendant, could not
be placed at the usual unloading place or near the plant or un-
loading spur so that they could be unloaded.

SAME. There was no delivery of cars of logs, to start demur-
rage charges, where owing to unprecedented floods, the railroad
company was unable to move the cars to a position where they
could be unloaded, according to the usual custom.

Appeal from a judgment of the superior court for
Spokane county, Huneke, J., entered July 1, 1919,
upon findings in favor of the defendant, dismissing an
action by a carrier to recover demurrage charges, tried
to the court.   Affirmed.

*A. C. Spencer* and *Hamblen & Gilbert,* for appellant.
*White & Randall,* for respondent.

BRIDGES, J.—By this action the plaintiff seeks to
recover of the defendant $2,395, as demurrage.

The defendant owns and operates a large sawmill
plant located on or near the Spokane river, where it
flows through the city of Spokane. The plaintiff is
a common carrier railroad. One of its main lines
enters Spokane, and it has various spur or side tracks
located on the land forming the site of the defendant's
mill plant. One of these spur or side tracks leads to
or alongside the bank of the river. Cars loaded with

[1]Reported in 204 Pac. 1059.

logs consigned to the defendant are placed on this spur track and are dumped into the defendant's mill pond or boom located within a portion of the waters of the river. Prior to the occurrences hereinafter mentioned, the defendant had executed and delivered to the plaintiff an agreement which is called a "Pacific Northwest Demurrage Bureau Average Agreement." This agreement, among other things, provided for a certain number of hours free time within which cars delivered to the defendant might be unloaded without any charge for demurrage, but thereafter certain demurrages were to result.

On May 13, 1917, the plaintiff delivered on the unloading spur track certain cars loaded with saw logs. On that date a large freshet was running in the Spokane river, and during that day it became so great that the banks of the river were overflowed, and from that time on until sometime in the following month the river was unprecedentedly high and most of the defendant's mill premises were under water, and the unloading spur was for the most part covered by from two to five feet of water. On days subsequent to the 13th of May, and while the river was still in freshet, the plaintiff brought into Spokane other cars loaded with saw logs, consigned to the defendant. Because of the high water conditions it was unable to put these cars on the unloading spur or within the yard of the defendant, consequently they were all left at places outside of the defendant's premises, and at points where they could not be unloaded. During all of this period there were eight loaded cars on the unloading spur, and some twenty-two loaded cars which had been left at places outside of the defendant's mill premises. It is on these thirty cars that the plaintiff seeks demurrage. There was a judgment dismissing the action, and the plaintiff has appealed.

Appellant takes the position here that the respondent failed to unload within the free time the thirty cars loaded with logs, because of the unprecedented freshet we have described, but contends that, under the average demurrage agreement to which we have called attention, the respondent would not be excused from demurrage on the ground that because of the high waters it was impossible for it to unload the cars within the free time. The view we take of this case makes it unnecessary for us to follow the appellant into the intricacies of the average demurrage agreement and the demurrage rules. We may assume, but not decide, that appellant's position is correct, yet we think it was not entitled to recover because of its failure to make any legal delivery of the logs in question. Previous to the time in question, it had been the custom for all logs consigned to the respondent, and carried by the appellant, to be delivered on the unloading spur. That was the only place for delivery of the logs for unloading. The appellant, because of the unprecedented flood conditions, was unable to deliver twenty-two cars of the logs in question at the usual unloading place, and it would seem that as to those cars there had been no delivery, and consequently there could be no demurrage. Those cars were left at distances running from one-fourth of a mile to a mile or more away from the respondent's plant and its unloading spur.

While the situation with reference to the other eight cars is quite different from that concerning the twenty-two cars just mentioned, yet we are of the opinion that there was no delivery of those cars so as to start the running of demurrage. As we have already said, those eight cars were placed on the unloading spur before, but on the day, the river began to overflow its banks.

It satisfactorily appears that, before cars could be unloaded, it was necessary that they be placed in certain positions on the spur. This placing was always done, whenever requested, by appellant's switch engines. Such was the custom. It further appears that these eight cars on the spur were in such position as that they could not be unloaded into the boom without the appellant's switch engine moving them. The respondent requested appellant's servants to so move these cars, but they were unable to do so because of the extreme high waters and the resultant dangerous condition of the tracks. Under these facts, it seems clear to us that there was not such a delivery of these eight cars as to start the running of demurrage. We therefore hold that, whatever might have been appellant's rights under its contract had these cars been delivered in position to be unloaded, it cannot recover any demurrage because none of the cars was so delivered. Judgment affirmed.

PARKER, C. J., FULLERTON, MITCHELL, and TOLMAN, JJ., concur.